## Loretta Literary & Benevolent Institution *v.* Clarrisa Able, et al.

**Agreed Partition of Real Estate.**

> Where persons own undivided interests in real estate adjoining a tract necessary to form separate farms and each have some timber and all of such parties agree upon lines dividing their interests and in a friendly suit to partition the court renders judgment in accordance with their agreement and each of the parties takes possession of the tract given him, and acquiesce therein for many years, this court will not disturb such lines on the claim that they are not correct.

### APPEAL FROM MARION CIRCUIT COURT.

May 12, 1885.

Opinion by Judge Holt:

Prior to 1851 Jesse Abel and Joseph Spalding owned lands adjoining and bordering upon the south side of the Rolling Fork of Salt River. Running along the south side of them was a narrow strip of land of fifty-one acres which had been patented to Benedict Spalding, but belonged to Joseph Spalding. To the south of it and adjoining was a tract of woodland, which had been patented to one Shepherd, and which was jointly owned by Jesse Able and Joseph Spalding, and at their death had never been divided between them. It is claimed by appellants that after their death their heirs made a written agreement, which was filed in a friendly suit, brought for a division of the Shepherd land, by which the Benedict Spalding

fifty-one-acre tract was by the consent of the Spalding heirs thrown upon the Shepherd lands, and then it and the fifty-one acres divided between them as one tract by an agreed line. A judgment was entered in conformity to it, the object being that the farm of each lying below upon the river might have woodland to support it, and the fifty-one acres was thrown with the Shepherd land as it lay between the latter and the farms on the river, and it was necessary for each to cross it to get to the woodland from their farm.

In March, 1851, one Duparc purchased the Abel land and the deed to him from his vendor, one Winsott, did not follow the alleged agreed line and which as is alleged had been fixed by the judgment of a competent court; but conveyed more of the fifty-one acres and the Shepherd tracts than had fallen to Able by the division. The appellant by devise became the owner of Duparc's estate, and the object in part of this suit by the Spalding heirs was to establish the agreed line and to restrict the appellant to the one hundred acres off the east end of the fifty-one acres and Shepherd tracts, which had fallen as is claimed to the Able heirs by the division. The judgment below does this, and of it the appellant complains.

Upon the opposite or north side of the Rolling Fork, Benedict Spalding owned a large body of land and in March, 1797, he sold ninety-five acres of it to one Formier, and the appellant is the owner of it by devise. Benedict Spalding devised his land to Ignatius Spalding and he died in 1837 leaving a widow, who died in 1877, and six children, one of whom sold his undivided one-sixth interest to Duparc and the appellant is the owner of it by devise.

Before the deed was made to the ninety-five acres, it was surveyed by one Morgan, and the original survey was in evidence in the lower court upon the trial of this case and a copy of it is a part of this record. Benedict Spalding is directly connected with it by receipts for the purchase money executed by him upon the back of the paper, and which are proven by their age and testimony showing that the signature to them was made by the same person, who signed the deed to Duparc.

One line of the survey reads thus: "thence down and with the river to the fording place, thence with a bank within the river S. 20 W. 30 poles S. 49½ W. 14 poles; thence S. 87 W. 16 poles;

thence N. 60 W. 18 poles; thence by a straight line to the first beginning, containing 95 acres."

The deed which was made August 10, 1797, says: "thence down and with the river S. 20 degrees west 3 poles, S. 49½ degrees, west 14 poles, S. 87 degrees, west 16 poles, North 60 degrees, west 18 poles; thence by straight line to the beginning and now laid off for ninety-five acres, more or less."

The survey includes about sixteen acres of land more than the deed; and another object of this suit was to restrict the appellant to the boundary named in the deed, while it claims that the true boundary purchased is shown by the survey and that the calls in the deed were written by mistake; and it also relied upon an adverse possession of the land for more than twenty years. The lower court established the line in accordance with the survey, and of this the appellees complain by a cross appeal.

The records of the Marion Court were destroyed by fire in 1863, but we think it is satisfactorily shown by the parol evidence that a line was agreed upon between the Abel and the Spalding heirs as to the fifty-one acres and the Shepherd tract, and that it was established by the judgment of the court, and subsequently regarded by the parties and the subsequent owners of the respective lands.

If this were not so, then the Abel heirs never had any right to the fifty-one-acre-tract, a portion of which was sold by Winsott to Duparc. There is no claim, and there is nothing showing that any right to any of it was acquired in any way unless it was by the consent division, and while the line described in the judgment is somewhat uncertain yet it agrees with the one that had been agreed upon according to this parol testimony, and moreover the judgment directs the court's surveyor to go upon the land and run the line in the direction indicated by the judgment so as to give to the appellant one hundred acres off the east end of the lands, and this was the quantity the Abel heirs were to have under the agreement.

Upon the other question we think the lower court was right. Even the appellees do not seem to claim that the calls in the deed are correct, because they do not seem to claim the line is where the deed would fix it. They contend that when the line strikes the river the distances named in the deed at once begin while the appellant contends that after striking the river the line runs

down to the ford, and then these "calls" begin. Unless the latter is true there is but eighty-one acres of the land, while if true, there are ninety-seven of it or near that quantity sold.

It is also contended by appellees that the line ran just north of an old road, but it is observable that neither the survey nor deed speaks of any road.

The testimony is conflicting as to the possession of the sixteen acres. It is certain from it, however, that appellants have had it actually inclosed for many years and under cultivation. They have had possession of it from thirty to forty years, and while there is evidence tending to show that for at least a part of this period the possession was friendly, yet there is other testimony to the reverse. Under this state of case we do not feel authorized to disturb the judgment of the chancellor.

In fact, both judgments presented by this appeal are of facts as to which the testimony is conflicting, but sufficient in our opinion to have authorized the judgment, and it is affirmed upon both the original and cross appeal.

Judgment *affirmed*.

*W. E. & S. H. Russell*, for appellant.
*Rountree & Lisle*, for appellee.